UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARLES JOHNSON,

    Plaintiff,

v.                                          Case No:   8:16-cv-413-T-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff, Charles Johnson, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

### I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

#### A. Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff filed an application for SSI on April 15, 2013, alleging a disability onset date of March 1, 1992. (Tr. 145-50). Plaintiff's application was denied initially on August 5, 2013, and upon reconsideration on September 18, 2013. (Tr. 75-78, 79-82). Plaintiff requested a hearing and, on March 19, 2015, an administrative hearing was held before Administrative Law Judge Christopher Messina ("the ALJ"). (Tr. 34-53). At the hearing, Plaintiff amended his alleged onset date to May 23, 2013, the day he turned 50 years old. (Tr. 37). On May 13, 2015, the ALJ entered a decision finding that Plaintiff was not under a disability since April 15, 2013, the date the application was filed. (Tr. 19-32). Plaintiff filed a request for review which the Appeals Council denied on January 7, 2016. (Tr. 1-7). Plaintiff initiated this action by filing a Complaint (Doc. 1) on February 22, 2016. The case is now ripe for review pursuant to 42 U.S.C. § 405(g).

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 23, 2013, the alleged onset date. (Tr. 21). At step two, the ALJ found that Plaintiff had the following severe impairments: disc herniation in the lumbar spine, essential hypertension, and asthma. (Tr. 21). At step three, the ALJ found that Plaintiff did not

have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.967(b) meaning that the claimant can lift twenty pounds occasionally and ten pounds frequently. The claimant can also stand and walk for six hours of an eight-hour workday and sit for six hours of an eight-hour work day. In addition, the claimant can never climb ladders, ropes, or scaffolds; can occasionally perform postural activities; and must avoid concentrated exposure to pulmonary irritants.

(Tr. 22). At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. 26).

At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Doc. 26-27). Specifically, the ALJ found that Plaintiff can perform the requirements of such jobs as bakery laborer, cloth hand trimmer, and egg washer. (Tr. 27). The ALJ concluded that Plaintiff had not been under a disability since April 15, 2013, the date he filed his application. (Tr. 27).

**II.     Analysis**

Plaintiff raises three issues on appeal: (1) whether the ALJ erred by failing to fully and fairly develop the record concerning Plaintiff's alleged illiteracy; (2) whether substantial evidence supports the ALJ's RFC finding; and (3) whether substantial evidence supports the ALJ's credibility finding. The Court will address each issue in turn.

**1) Whether the ALJ erred by failing to fully and fairly develop the record concerning Plaintiff's alleged illiteracy**.

Plaintiff argues that the ALJ erred by failing to fully and fairly develop the record concerning his alleged illiteracy. (Doc. 19 p. 10-12). Plaintiff contends that while he can read

basic words, he qualifies as illiterate under the SSA's regulations. (Doc. 19 p. 11-12). Plaintiff contends that the ALJ should have sent Plaintiff for an evaluation of his reading and writing abilities to determine if he was illiterate and the ALJ's failure to do so warrants remand. (Doc. 19 p. 12). In response, Defendant argues that Plaintiff's argument lacks merit because substantial evidence indicates that Plaintiff was literate. (Doc. 20 p. 5).

In this case, given the ALJ's finding that Plaintiff could perform a limited range of light work, that he has no past relevant work, and that he is closely approaching advanced age, a finding that Plaintiff is illiterate would entail a finding of disability pursuant to the Grids. 20 C.F.R. Part 404, Subpt. P, App. 2, rule 202.09. Thus, the relevant question is whether substantial evidence supports the ALJ's finding that Plaintiff is literate.

"Illiteracy" is defined by the Social Security Act as follows:

> Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

20 C.F.R. § 416.964. Illiteracy is not a nonexertional limitation. *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996). Rather, literacy is a component of the education category under the grids and, as such, the ALJ bears the burden of proof on the matter. *Hood v. Astrue*, 2010 WL 1223885, at *5 (M.D. Fla. Mar. 24, 2010).

In his decision, the ALJ found that Plaintiff has a limited education and is able to communicate in English. (Tr. 26). The ALJ explained that he reached this decision because "[t]he claimant testified that he completed an eleventh grade education and can read and write basic sentences in English. (Hr'g Test. At 2:10pm). I find that the claimant is limited to reading simple words and short phrases." (Tr. 27).

The Court finds that substantial evidence supports the ALJ's determination. Plaintiff's May 20, 2013 Disability Report indicates that he can read and understand English, and write more than just his name in English. (Tr. 195). Furthermore, at the March 19, 2015 ALJ hearing, the ALJ asked Plaintiff if he was able to read and write and Plaintiff testified that he could "read basic stuff," including street signs. (Tr. 38, 44). Plaintiff demonstrated his ability to read at the ALJ hearing, by reading something in the room that contained the message "do not shut down." (Tr. 44). Plaintiff further testified that he could read the easy words in a newspaper and could comprehend what he read in a newspaper article. (Tr. 44-45).

In reaching this decision, the Court has taken into account Plaintiff's school records and standardized tests scores from 30 years ago. While these records certainly demonstrate that Plaintiff had far from mastered the reading and writing skills expected of an 11th grader at that time, they do not demonstrate that Plaintiff was incapable of reading or writing a simple message as required by the Social Security Act's definition of illiterate. 20 C.F.R. § 416.964. Accordingly, the Court finds that the ALJ did not err by failing to fully and fairly develop the record with respect to Plaintiff's alleged illiteracy.

**2) Whether substantial evidence supports the ALJ's RFC finding.**

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence as the medical evidence of record demonstrates that Plaintiff is more limited than found by the ALJ. (Doc. 19 p. 12-15). The fourth step in the evaluation process requires the ALJ to determine the plaintiff's RFC and based on that determination, decide whether the plaintiff is able to return to his/her previous work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.1986). The determination of RFC is within the authority of the ALJ and along with the Plaintiff's age, education, and work experience, the RFC is considered in determining whether the Plaintiff can

work. *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1520(f)). The RFC assessment is based upon all the relevant evidence of a Plaintiff's remaining ability to do work despite her impairments. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (11th Cir.1997) (citing 20 C.F.R. § 404.1545(a)). That is, the ALJ must determine if the Plaintiff is limited to a particular work level, using all relevant medical and other evidence in the case. *Phillips*, 357 F.3d at 1238 (citing 20 C.F.R. § 404.1567).

In this case, the Court finds that substantial evidence supports the ALJ's RFC finding. For example, consultative examiner Anand K. Rao, M.D. examined Plaintiff on July 24, 2013, and found that, although Plaintiff's back and spine were "certainly abnormal" and he demonstrated some restricted movements, Plaintiff's flexion at the lumbar spine was 75 degrees, and extension was normal. (Tr. 24, 269). He could raise his legs 60 degrees on each side, could walk without any assistive devices, had a slightly abnormal gait, could bend well, and get up from the chair and table with a moderate amount of difficulty. (Tr. 269). Dr. Rao opined that although Plaintiff has definite back problems, he could still do a moderate amount of work (Tr. 270). Dr. Rao further opined that Plaintiff "cannot lift more than 50-65 pounds at a time. Otherwise, he does not have any significant physical disability at this time" (Tr. 270).

Plaintiff contends that Dr. Rao's opinion that Plaintiff could still do a moderate amount of work is ambiguous and could mean that Plaintiff was only capable of performing a moderate amount of sedentary work. The Court rejects this reading of Dr. Rao's opinion given that Dr. Rao only specified that Plaintiff cannot lift more than 50-65 pounds at a time and that Plaintiff had no other significant physical disability.

The ALJ noted that Plaintiff has not pursued treatment for his back conditions other than management with pain medications. (Tr. 23-24). The ALJ noted that the November 5, 2013 record

from Saqib Khan, M.D. indicates Plaintiff declined the epidural procedures he recommended. (Tr. 24, 540-41). There is also no evidence that Plaintiff pursued David Ivan Croteau, M.D.'s referral for him to see a neurosurgeon. (Tr. 24, 46). In addition, March 2014 examination records indicate Plaintiff had a steady gait with normal range of motion. (Tr. 24, 589, 607, 616). Moreover, State agency medical consultant P.S. Krishnamurthy, M.D. opined that claimant had the RFC to perform a reduced range of light work (Tr. 25, 65-73).

The ALJ noted that although Plaintiff had mild symptoms from uncontrolled hypertension at one point, Dr. Croteau noted that with medication, the claimant's symptoms at decreased, that Plaintiff had excellent control of his blood pressure, and that Plaintiff was experiencing no side effects due to medication. (Tr. 24). Further, the ALJ noted that Plaintiff's asthma was treated conservatively with inhalants and Plaintiff was encouraged to make lifestyle changes. (Tr. 25).

In his brief, Plaintiff cites to various diagnosis in support of his argument that the ALJ's RFC is not supported by substantial evidence. For example, Plaintiff notes that an MRI done on October 6, 2013, shows that the disc at L4-5 abutted the descending nerve roots and caused mild to moderate bilateral neural foraminal stenosis; that there was a central annular tear causing mild central canal stenosis; and that the disc at L5-S1 caused minimal neural from stenosis and abutted the descending left nerve roots. (Doc. 19 p. 13) citing (Tr. 711). Plaintiff notes that Dr. Croteau described these findings as "significant" and "extensive" pathology. (Doc. 19 p. 13-14) citing (Tr. 309, 311). Plaintiff notes that in taking Plaintiff's history, Dr. Croteau noted that Plaintiff had back pain if he stood for too long. (Doc. 19 p. 14) citing (Tr. 291). In addition, Plaintiff notes that Dr. Khan, the pain management doctor, indicated that Plaintiff's back pain was aggravated by walking and standing and relieved by laying down to rest, that Plaintiff was leaning to the right and walking with difficulty, that Plaintiff had decreased pin prick and temperature at L4-5 and L5-

S1 distribution on the right, that there was tenderness paraspinal at the facet joints, spasms, tenderness, trigger points, and range of motion decrease in the lumbar spine; and that Plaintiff had bilaterall tenderness and decreased range of motion in the sacroiliac joints, and lumbar and thoracic fact joint tenderness. (Doc. 19).

This evidence does not demonstrate that the ALJ's RFC finding is not supported by substantial evidence. While Plaintiff cites to various diagnosis, he has failed to demonstrate that these impairments result in functional limitations greater than found by the ALJ. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005) ("the mere existence of these impairment does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard.").

Finally, the Court rejects Plaintiff's argument that the ALJ's RFC finding is not supported by substantial evidence because the ALJ improperly gave great weight to the opinion of agency non-examining, non-treating physician Dr. P.S. Krishnamurthy. While Plaintiff is correct that Dr. Krishnamurthy gave his opinion in September of 2013, prior to the MRI evidence and Plaintiff's visits to pain management specialist Dr. Kahn, this fact does not mean it was improper for the ALJ to accord great weight to the opinion. The ALJ's decision demonstrates that the he considered the evidence subsequent to Dr. Krishnamurthy's opinion, and determined that Dr. Krishnamurthy's opinion was supported by the medical record, "including the claimant's spasms and tenderness of the lower back and slightly abnormal gait." (Tr. 25).

By finding that substantial evidence supported the ALJ's RFC determination the Court does not mean that there is no evidence that runs contrary to the ALJ's conclusions. As noted above, however, substantial evidence "is such relevant evidence as a reasonable person would accept as adequate support to a conclusion" and "[e]ven if the evidence preponderated against the

Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford*, 363 F.3d at 1158. Here, the ALJ's decision is supported by such evidence that a reasonable person would accept as adequate. Plaintiff has failed to carry his burden on demonstrating disability. Accordingly, the Court will not disturb the ALJ's findings

### 3) Whether substantial evidence supports the ALJ's credibility finding.

Plaintiff argues that ALJ's credibility finding was not supported by substantial evidence because the ALJ erroneously described Plaintiff's physical examination findings concerning his back pain as "minimal." (Doc. 19 p. 16). Plaintiff contends that there was significant documentation supporting Plaintiff's complaints of back pain. (Doc. 19 p. 17).

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)). After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine if it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. [citations omitted] Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson v. Barnhart*, 284 F.3d at 1225. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*

*v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)). The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno v. Astrue*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms "are not entirely credible for the reasons explained in this decision." (Tr. 23). The ALJ explained that although Plaintiff stated his back impairment restricted his ability to sit, stand, walk, and perform postural limitations, and the imaging study showed some limitations, treatment for his back condition has been conservative, he has only a slightly abnormal gait, and he has not pursued treatment other than management with pain medications. (Tr. 23-24, 269-70, 291, 311, 345, 374, 540-46, 607, 616, 710-11). Furthermore, Plaintiff alleged that he could no longer work primarily due to his gradual-onset back impairment, but he did not have a work history to show a contrast in physical ability. (Tr. 23).

Further, the ALJ noted that the medical records document that Plaintiff has had asthma since birth and that his asthma has not posed significant restrictions on his exertional levels with appropriate medication. (Tr. 23). Specifically, Plaintiff's treating physicians have treated Plaintiff's asthma conservatively with inhalants and encouragement to make lifestyle changes. (Tr. 25, 271, 291, 342, 345). Plaintiff told Dr. Croteau that he felt that his asthma was well-controlled (Tr. 25, 291). At Dr. Rao's consultative examination, Plaintiff's lungs were clear. (Tr. 25, 269). Plaintiff continued to receive asthma medications while incarcerated and after his release from jail,

continued his asthma treatments with Dr. Croteau. (Tr. 25, 453, 489, 553, 555, 557, 616). While Plaintiff had episodes of wheezing, his overall asthma treatment was consistent and conservative over time, without multiple acute exacerbations or hospitalizations. (Tr. 25, 271, 291, 342, 345, 453, 489, 595, 603, 607).

In addition, although Plaintiff had mild symptoms from uncontrolled hypertension at one period, Dr. Crouteau's records indicate that Plaintiff's symptoms decreased with medication, Plaintiff had excellent control of his blood pressure, and had no side effects from the medication. (Tr. 24). Plaintiff also had no shortness of breath, chest pain or dyspnea, and his blood pressure reading was normal, 121/81 mmHg. (Tr. 24, 276, 278). As of July 2013, Dr. Croteau noted that Plaintiff's blood work looked "excellent." (Tr. 24, 374, 378). Plaintiff's blood pressure was also normal at Dr. Rao's consultative examination. (Tr. 24, 269). Although Plaintiff had a few instances of elevated blood pressure during the October 2013 to February 2015 period, overall, the records indicated that Plaintiff was asymptomatic and his hypertension was well controlled by medications and monitored with blood work as ordered by his treating physician. (Tr. 24-25, 269, 276, 278, 311, 345, 374, 378, 511, 573, 607, 691).

The ALJ sufficiently explained his reasoning for finding Plaintiff not entirely credible. The ALJ's reasoning was supported by substantial evidence. Accordingly, the Court will not disturb the ALJ's finding on appeal.

**III.   Conclusion**

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on June 28, 2017.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties